IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL V. PALAMARA individually and on behalf of all others similarly situated, Plaintiff, v. KINGS FAMILY RESTAURANTS Defendant. | Civil Action No. 07-317 |

## MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                April 22, 2008

This is an action alleging violations of the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681 et seq., ("FACTA"). Plaintiff, Michael V. Palamara, alleges on behalf of himself and all others similarly situated that defendant, Kings Family Restaurant, violated the truncation requirements FACTA, 15 U.S.C. § 1681(g)(1). Before the court are plaintiff's unopposed Motion for Final Approval of the Class Action Settlement [Doc. No. 24], and plaintiff's unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Plaintiff Incentive Award [Doc. No. 26].

For the reasons set forth below, the motions will be granted.

I.  BACKGROUND

Plaintiff alleges, on behalf of himself and all others similarly situated, that defendant violated FACTA. Plaintiff specifically alleges that defendant unlawfully printed the expiration dates of customer credit and debit cards on electronic receipts provided to the customers at the point of sale in violation of 15 U.S.C. § 1681(g)(1). The case was designated for the Alternative Dispute Resolution("ADR") program. The parties selected Arthur H. Stroyd, Jr. as mediator. Prior to the mediation, the parties exchanged information and plaintiff served written discovery on defendant.

On June 13, 2007, the parties engaged in a full day mediation session with Mr. Stroyd. Although this session did not result in an agreement, the parties continued settlement negotiations in conjunction with conducting additional discovery. On August 24, 2007, the parties reached an agreement in principal to settle the class claims in dispute. The parties executed a Class Action Settlement Agreement on September 21, 2007.

The parties agreed to certification, for settlement purposes only, of a class defined as:

> all persons who received electronically printed receipts from a Kings at the point of sale or transaction, in a transaction occurring between December 4, 2006 and March 9, 2007 (non Bentleyville locations) or between February 7, 2005 and March 9, 2007 (Bentleyville), wherein the receipt displayed (1) more than the last five digits of the person's credit

2

> card or debit card number, and/or (2) the expiration date of the person's credit card.

For the purposes of settlement, defendant acknowledged that between December 4, 2006 and March 9, 2007, at all locations other than Bentleyville, it used point of sale equipment that failed to omit the expiration dates of customer credit or debit cards from printed receipts. Defendant acknowledged a similar lapse occurred at its Bentleyville location between February 7, 2005 and March 9, 2007. During these periods, approximately 291,000 customers were given receipts that included the expiration date of their credit or debit card. The parties agreed that neither plaintiff, nor any member of the putative class, suffered any actual monetary injury as a result of defendant's violation of FACTA.

The settlement agreement provided that defendant will agree to the court's entry of a consent decree requiring defendant to remain in full compliance with the relevant provisions of FACTA. In addition, defendant offered participating class members a Settlement Relief Voucher permitting the class member to select to receive one of the following four options: (1) a free appeteaser and a free mini-sundae, with a retail value of up to $4.68; or (2) a free homemade bowl of soup and a free slice of apple or pumpkin pie, with a retail value of up to $4.78; or (3) a free cup of soup

3

and a free appeteaser, with a retail value of up to $4.38; or (4) a free dinner salad and a free single scoop of Kings Premium Ice Cream, with a retail value of up to $4.38. Defendant has further agreed to donate 500 gift certificates for kids soft drinks, with a retail value of $0.99 per drink, to First Tee, a non-profit organization which offers underprivileged children the opportunity to play golf. Defendant also agreed to pay Class Counsel attorneys fees and costs not to exceed $75,000.

On November 7, 2007, the class was certified for settlement purposes [Doc. No. 21]. The parties were directed, however, to submit a revised plan for notice, which was approved on November 26, 2007 [Doc. No. 23]. Thereafter, pursuant to the revised notice plan, a copy of the summary notice was published on December 9, 2007, in the Pittsburgh Post Gazette and the Steubenville Herald Star. A copy of the notice was also published in the Altoona Daily Mirror on December 9, 2007 and January 20, 2008. Notice was also prominently displayed in each King's restaurant. In addition, the parties made the full notice available on defendant's website.

All requests for exclusion from the class and notices of objection to the settlement were to be filed on or before January 30, 2008. No class member sought exclusion from the class, nor did any class member file an objection to the settlement.

4

A fairness hearing was held on February 15, 2008. At the hearing, counsel for defendant represented that, as of that date, approximately 165 class members had obtained a voucher.

II. STANDARD OF REVIEW

Final approval of a settlement pursuant to Fed.R.Civ.P. 23(e), turns on whether settlement is "fair, reasonable and adequate." In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001). It is within the court's sound discretion whether or not to approve a settlement. In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 782-83 (3d Cir. 1995). Settlements which are reached as the result of arm's length negotiation between capable counsel are presumed to be fair and reasonable. In re Gen. Motors, 55 F.3d at 785.

The court of appeals has held that the question of whether a proposed settlement is fair, reasonable and adequate requires an examination of the following nine (9) factors: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness

of the settlement in light of all the attendant risks of the litigation. <u>Girsh v. Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975).

III. <u>DISCUSSION</u>

A. <u>Girsh Factors</u>

As set forth below, the <u>Girsh</u> factors favor approval of the settlement.

1. <u>Complexity of the Litigation</u>

The first <u>Girsh</u> factor "captures the probable costs, in both time and money, of continued litigation." <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 535-36 (3d Cir. 2004). Although the factual issues in this case are fairly straightforward, the legal issues are complex. Further, plaintiff would likely face substantial obstacles in proving that defendant's FACTA violation was willful. Thus, this factor weighs in favor of approving the settlement.

2. <u>The Reaction of the Class</u>

This factor "attempts to gauge whether members of the class support the settlement." <u>In re Warfarin</u>, 391 F.3d at 536. Here, no class member opted out, nor did any class members file an objection. Admittedly, only 165 class members obtained coupons, a response rate the court estimates to be less than one percent of the class. The absence of any objection to the settlement, however, is more significant and weighs in favor of approving the settlement.

### 3. The Stage of the Proceedings

The third Girsh factor requires the court to examine the procedural history of the case in order to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. Warfarin, 391 F.3d at 537. Here, the settlement was reached at a relatively early stage of the proceedings. It does not appear that defendant responded to plaintiff's formal discovery requests. It does appear, however, that defendant provided plaintiff with extensive documentation which allowed plaintiff to make an informed assessment of the value of his case. Accordingly, this factor weighs in favor of approving the settlement.

### 4. The Risks of Establishing Liability and Damages

The fourth and fifth Girsh factors, are appropriately analyzed jointly in this case. While it appears plaintiff would have faced few obstacles in establishing that defendant violated FACTA, there is a substantial likelihood that plaintiff would not be able to establish that defendant's violation was "willful."

Further, although FACTA is a relatively recent statute, the veritable onslaught of class action litigation brought pursuant to the statute has given rise to a line of cases in the United States District Court for the Central District of California holding that FACTA class actions do not satisfy the superiority prong of Rule 23(b)(3) because they would expose the

defendant to ruinous damages in violation of the due process clause of the Fifth Amendment to the United States Constitution. See e.g., Najarian v. Charlotte Russe, Inc., Civil Action No. 07-501(C.D. Cal. June 12, 2007)(Klausner, J.); Soulian v. Int'l Coffee and Tea L.L.C., Civil Action No. 07-502 (C.D. Cal. June 12, 2007)(Klausner, J.).

Thus, plaintiff faced substantial risks in establishing defendant's liability and proving damages. Accordingly, this factor weighs in favor of approving the settlement.

### 5. Risks of Maintaining the Class Action Through Trial

In light of the slim possibility that defendant could successfully argue that a class action is not the superior method of adjudication of this matter, there is a risk that plaintiff would not be able to maintain this action as a class action through trial. This factor weighs slightly in favor, therefore, of approval.

### 6. Ability of Defendant to Withstand Greater Judgment

Defendant faced a potential judgment of over $1,000,000 in this case. Defendant is a small, regional restaurant business. A damage award of this size would clearly adversely affect defendant. This factor weighs in favor of approval of the settlement.

7. <u>Range of Reasonableness of the Settlement in Light of Best Possible Recovery and all the Attendant Risks of Litigation</u>

The final two <u>Girsh</u> factors require the court to analyze the settlement in light of the best possible recovery and the attendant risks of litigation. The parties have agreed that the average retail value of the vouchers is $4.38 per transaction. As noted above, there are approximately 291,000 transaction at issue. Thus, the total settlement relief made available to the class was $1,274,5800. The statutory minimum for a FACTA violation is $100 per transaction. Although the settlement relief is a mere fraction of the potential recovery, the court finds that the settlement is reasonable in light of the substantial risks plaintiff faced in establishing defendant willfully violated FACTA. These factors weigh in favor of approving the settlement.

III. <u>Attorneys' Fees, Costs and Incentive Payment</u>

Plaintiff has also filed a Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Plaintiff Incentive Award [Doc. No. 26]. Specifically, plaintiff seeks $75,000.00 in attorneys' fees and costs and a $2,000.00 incentive payment.

A. <u>Standard of Review</u>

A court reviewing a class action settlement must thoroughly review fee petitions for fairness. Thorough review is critical due to the danger "that the lawyers might urge a class settlement at a low figure or on a less than optimal basis in exchange for red carpet treatment for fees." In Re General Motors, 55 F.3d at 820 (citation omitted). In addition, "[c]ourts must be especially vigilant in searching for the possibility of collusion in precertification settlements." Id.

This is a common fund case. There are two methods for assessing attorneys' fees in class actions: (1) the common fund method; and (2) the percentage of recovery method or lodestar method. In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005). The common fund method is "generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." Id. (internal quotation omitted). The lodestar method is helpful, however, to "cross-check the percentage fee award" in order to verify that the fee award is not excessive. Id. at 305.

The court of appeals has held that there are seven (7) factors this court should analyze in order to determine whether the fee award is reasonable: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement

terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of non-payment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190, 195 n. 1 (3d Cir. 2000). In <u>In re Cendant Corp.</u>, 243 F.3d 722 (3d Cir. 2001), the court of appeals cautioned that "a district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." <u>In re Cendant Corp.</u>, 243 F.3d at 736.

B. <u>Common Fund Analysis</u>

1. <u>Size of the Fund</u>

As noted above, this is a common fund case. The settlement made available to the class a total aggregate benefit of between $1,352,075.32 and $1,468,475.00. <u>See</u> Plaintiff's Motion for Award of Attorneys' Fees, [Doc. No. 26] at paragraph 4. Although the total number of class members is unknown, there were 291,000 transactions which fell within the class definition. The fees represent approximately 6% of the fund. Accordingly, the first <u>Gunter</u> factor favors approval of the requested fee.

### 2. Objections to the Settlement and/or Fees

There were no objections to the settlement or the requested fee. Thus, this factor clearly favors approval of the requested fee.

### 3. The Skill and Efficiency of the Attorneys

Class counsel are well known to this court as zealous and effective attorneys. This case was handled efficiently. This factor, therefore, favors approval of the requested fee.

### 4. The Complexity and Duration of the Litigation

This case reached settlement approximately six (6) months after it was filed. The relatively short duration, however, belies the complexity of the case. The court finds this factor favors approval of the fee.

### 5. Risk of Non-Payment

Class counsels' fee in this matter was wholly contingent upon the outcome. See Plaintiff's Motion for Award of Attorneys' Fees, [Doc. No. 26] at Exhibit 1 paragraph 2. In light of the obstacles to obtaining a favorable verdict in this matter, the risk that class counsel would not be compensated for their work has been real and substantial. This factor weighs in favor of approving the requested fee.

### 6. Amount of time Devoted to the Case

Class Counsel billed approximately 246 hours to this matter. This is a relatively small amount of time for a class

action. Accordingly, this factor favors approval of the requested fee.

### 7. Awards in Similar Cases

The fee requested in this case is typical of fees awarded in similar cases in this district. See Reed v. Whole Enchilada d/b/a Big Burrito Restaurant Group, Civil Action No. 07-357 (W.D. Pa. March 28, 2008)(approving attorneys fees of $105,000 in similar FACTA litigation); Klingensmith v. Max & Erma's Restaurants, Inc., 2007 WL 3118505 (W.D. Pa. October 23, 2007)(approving $110,000 in similar FACTA litigation). Thus, this factor favors approval of the settlement.

### C. Lodestar Cross-Check

The court of appeals has opined that "it is sensible for district courts to cross-check the percentage fee award against the lodestar method." In re Rite Aid, 396 F.3d at 305. Here, class counsel incurred a total lodestar and costs of $73,896.50. See Plaintiff's Motion for Award of Attorneys' Fees, [Doc. No. 26], at paragraph 5. The court of appeals has noted that lodestar multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." In re Cendant, 243 F.3d at 742 (citation and internal quotation omitted). Here, the multiplier is approximately 1.01. This is well within the range of approval

and, therefore, the lodestar cross-check provides additional support for approving the requested fee.

D. Incentive Payment

Plaintiff has also requested an incentive payment of $2,000.00. The court finds that the incentive payment is appropriate and will be approved.

E. Summary

After careful review of class counsel's request for attorneys' fees, costs and an incentive award, the court concludes that the fee requested is reasonable under the Gunter factors, and that the lodestar cross-check further supports a finding of reasonableness. The court will, therefore, approve Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Payment of Plaintiff Incentive Award [Doc. No. 26].

IV. CONCLUSION

For the reasons set forth above, plaintiff's unopposed motion for final approval of the class action settlement [Doc. No. 24], and plaintiff's unopposed motion for award of attorneys' fees, costs and to approve an incentive award to Mr. Palamara [Doc. No. 26] will be granted. The appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL V. PALAMARA individually and on behalf of all others similarly situated, <br> Plaintiff, <br><br> v. <br><br> KINGS FAMILY RESTAURANTS <br> Defendant. | Civil Action No. 07-317 |

## JUDGMENT ORDER

AND NOW, this 22nd day of April, 2008, upon consideration of Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement [Doc. No. 24], and Plaintiff's Unopposed Motion for Award of Attorneys' Fees, Costs and to Approve an Incentive Award to Mr. Palamara [Doc. No. 26]. IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1. The Court, for the purposes of this Judgement and Order of Dismissal ("Order"), adopts all defined terms as set forth in the Class Action Settlement Agreement filed in this case, [Doc. No. 16 at Exhibit 1];

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and has personal jurisdiction over the class representative, the members of the settlement class and defendant Kings Family Restaurants;

3. The Court finds that the distribution of Notice to Class members Re: Pendency of Class Action as provided for in the Order directing dissemination of Notice of Class Action Settlement, [Doc. No. 23], constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully met the requirements of the Due Process Clause of the Fifth Amendment to the United States Constitution. Based on the evidence and other material submitted in conjunction with the Settlement Hearing, the notice to the class was adequate;

4. The Court approves the settlement of this case, as set forth in the Settlement Agreement, and finds that each of the releases and other terms are fair, reasonable and adequate as to the Settling Parties. The Settling Parties are directed to perform in accordance with the terms set forth in the Settlement Agreement;

5. As no individual requested exclusion from the class, all of the released claims are dismissed with prejudice, and the Settling Parties are to bear their own attorneys' fees and costs, except as otherwise provided in the Settlement Agreement;

6. The Court has conditionally certified a class of all Members of the Settlement Class as that term is defined in the Stipulation;

7. The Court finds that the settlement is fair, reasonable and adequate and satisfies the requirements of Fed.R.Civ.P. 23;

8. By this judgment, the class representative shall release, relinquish and discharge, and each of the settlement class members shall be deemed to have, and by operation of the judgment shall have, fully, finally, and forever released, relinquished and discharged all released claims (including unknown claims), including, without limitation, all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever including, without limitation, statutory, constitutional, contractual or common law claims, whether known or unknown, whether or not concealed or hidden, against the Kings releasees and each of their affiliates, predecessors, successors, divisions, joint ventures and assigns, and each of those entities' past or present owners, directors, officers, employees, partners, members, principals, agents, underwriters, insurers, co-insurers, re-insurers, shareholders, attorneys, accountants or auditors, banks or investment banks, associates, personal or legal representatives, that accrued at any time on or prior to November 7, 2007, for any type of relief, including, without limitation, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorney fees, litigation costs, restitution, or equitable relief, based on any and all claims in any way related to the publication of

cardholder account information, including but not limited to the last five digits of the cardholder's account number or the expiration date, upon a receipt provided to the cardholder at the point of sale of the transaction;

9. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the settlement: (I) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any released claim, or of any wrongdoing or liability of the Kings releasess; or (II) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Kings releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. The Kings releasees may file the Settlement Agreement and/or the judgment from this litigation in any other action that may be brought against them in order to support a defense or counterclaim based on principals of res judicata, collateral estoppel, release, good faith settlement, judgment bar or any theory of claim preclusion or issue preclusion or similar defense or counterclaim;

10. The only settlement class members entitled to relief pursuant to his judgment are participating claimants. Neither the Settlement Agreement nor this judgment will result in the creation of any unpaid residue or residual;

11. Kings Family Restaurants has agreed to pay Class Counsel their reasonable attorneys' fees as well as certain

allowable costs in this matter. The court finds that these agreements are fair and reasonable. Kings Family Restaurants is directed to make such payments in accordance with the terms of the Settlement Agreement

       12. The Court reserves exclusive and continuing jurisdiction over this matter and the parties for the purpose of supervising the implementation, enforcement, construction, administration and interpretation of the Settlement Agreement and this judgment.

       13. This document is a judgment for purposes of Fed.R.Civ.P. 58.

       14. This matter is hereby DISMISSED, with PREJUDICE.

       15. The Clerk is directed to mark this case CLOSED.

BY THE COURT:

/s/ Lancaster, J.

cc: All Counsel of Record